IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

ALPHONSO R. NELSON,

    Petitioner,

v.                                                                 Civil Action No. 3:12CV388

B.B. WATSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Alphonso R. Nelson, a Virginia state inmate proceeding *pro se*, brings this petition for a writ of habeas corpus ("§ 2254 Petition") pursuant to 28 U.S.C. § 2254.[1] (ECF No. 1.) Respondent filed a Motion to Dismiss (ECF No. 10) and Rule 5 Answer (ECF No. 11), providing Nelson with appropriate *Roseboro*[2] notice (ECF No. 13). Respondent contends, *inter alia*, that the statute of limitations bars this action.[3] (Resp't's Br. Supp. Mot. Dismiss and Rule 5 Answer 4, ECF No. 12.) Nelson responded. (ECF No. 16.) The matter is ripe for disposition. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254. For the reasons that follow, the Court will GRANT Respondent's Motion to Dismiss. (ECF No. 10.)

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] Respondent also argues that Nelson procedurally defaulted his claims and that his claims lack merit. (Resp't's Br. Supp. Mot. Dismiss and Rule 5 Answer 4.) Because the Court finds that the statute of limitations bars this action, the Court need not consider Respondent's alternative arguments.

# I. Procedural History

## A. Nelson's Sentencing and Direct Appeal

On March 1, 2001, a jury in the Circuit Court of the City of Fredericksburg, Virginia ("Circuit Court") found Nelson guilty of first degree murder and use of a firearm in the commission of murder. *Commonwealth v. Nelson*, Nos. CR2000-534 and CR2000-535, at 2 (Va. Cir. Ct. Mar. 5, 2001.) By order entered August 13, 2001, the Circuit Court sentenced Nelson to life in prison as to Count One and three years as to Count Two. *Commonwealth v. Nelson*, Nos. CR2000-534 and CR2000-535, at 3-5 (Va. Cir. Ct. Aug. 13, 2001).

On January 25, 2002, the Court of Appeals of Virginia ("Court of Appeals") dismissed Nelson's appeal for failure to timely file his notice of appeal with the Circuit Court. *Nelson v. Commonwealth*, No. 0129-02-2, at 1 (Va. Ct. App. Jan. 25, 2002). Nelson then filed a habeas corpus petition in the Circuit Court seeking a delayed appeal.[4] On December 17, 2002, the Court of Appeals granted Nelson leave to apply for a delayed appeal. *Commonwealth v. Nelson*, No. CL02-173, at 1 (Va. Ct. App. Dec. 17, 2002).

On May 18, 2004, the Court of Appeals affirmed Nelson's convictions. *Nelson v. Commonwealth*, No. 3408-02-2, at 1 (Va. Ct. App. May 18, 2004). On September 29, 2004, the Supreme Court of Virginia refused his petition for appeal. *Nelson v. Commonwealth*, No. 041413, at 1 (Va. Sept. 29, 2004). Nelson sought no review from the Supreme Court of the United States.

---

[4] Because the statute of limitations commenced after Nelson filed his habeas petition in the Circuit Court, this 2002 petition fails to impact the statute of limitations analysis for his § 2254 Petition. *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009).

B.  Nelson's State Habeas Petition

More than six years later, on January 24, 2011, Nelson filed a petition for writ of habeas corpus with the Circuit Court. Petition for Writ of Habeas Corpus at 1, *Nelson v. Watson*, No. CL11-35 (Va. Cir. Ct. filed Jan. 24, 2011.) On March 9, 2011, the Circuit Court dismissed his petition as not timely filed under section 8.01-654(A)(2) of the Virginia Code.[5] *Nelson v. Watson*, No. CL11-35 (Va. Cir. Ct. Mar. 9, 2011). Nelson subsequently noted an appeal. Notice of Appeal at 1, *Nelson v. Watson*, No. CL11-35 (Va. Cir. Ct. filed Apr. 13, 2011.) The Supreme Court of Virginia dismissed the appeal, finding that it "was not perfected in the manner provided by law because [Nelson] failed to timely file the notice of appeal," under Virginia Supreme Court Rule 5:9(a).[6] *Nelson v. Watson*, No. 111074, at 1 (Va. Feb. 2, 2012).

---

[5] This section provides that a habeas petitioner must file his state petition within two years from the date of final judgment in the state trial court or one year from the date of the final disposition of the direct appeal in state court, whichever is later. *See Hines v. Kuplinski*, 591 S.E.2d 692, 693 (2004). The Supreme Court of Virginia refused Nelson's petition for appeal on September 29, 2004. He therefore had until September 29, 2005 to file his petition in state court, but did not do so until five years and four months after that date.

[6] This rule provides:

> No appeal shall be allowed unless, within 30 days after the entry of final judgment or other appealable order or decree, or within any specified extension thereof granted by this Court pursuant to Rule 5:5(a), counsel for the appellant files with the clerk of the trial court a notice of appeal and at the same time mails or delivers a copy of such notice to all opposing counsel. A notice of appeal filed after the court announces a decision or ruling--but before the entry of such judgment or order--is treated as filed on the date of and after the entry.

Va. Sup. Ct. R. 5:9(a).

## C. Nelson's § 2254 Petition

On April 28, 2012, Nelson filed his § 2254 Petition.[7] (§ 2254 Pet. 1)[8] Nelson raises four grounds for relief:

1. The Commonwealth violated Nelson's Fifth[9] and Fourteenth[10] Amendment rights to due process when the Commonwealth knowingly used perjured testimony from five different witnesses. (Mem. Law Supp. § 2254 Pet. 8.)[11]

2. The Commonwealth and Fredericksburg Police Department violated Nelson's Fifth and Fourteenth Amendment rights to due process when they relinquished exculpatory evidence that would have exonerated Nelson. (*Id.*)

3. The Circuit Court of the City of Fredericksburg violated Nelson's Fifth and Fourteenth Amendment rights to due process by convicting Nelson without subject matter jurisdiction. (*Id.*)

4. The Supreme Court of Virginia erred by denying the appeal of Nelson's habeas corpus petition. (*Id.* at 9.)

## II. The Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for a federal *habeas corpus* relief." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citing cases). Such claims provide no basis because the habeas petitioner's

---

[7] The Court deems the § 2254 Petition filed on the date Nelson swears he placed the petition in the prison mailing system. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[8] The Court refers to the pages of this document as numbered by the CM/ECF docketing system.

[9] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

[10] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[11] The Court refers to the pages of this document as numbered by the CM/ECF docketing system.

4

detention results from the underlying state conviction, not the state collateral proceeding. *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008). ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (citing *Bryant*, 848 F.2d at 493)). Because Nelson's fourth claim merely complains of error in the state post-conviction proceedings, that claim fails to provide a cognizable basis for federal habeas corpus relief. Accordingly, Claim 4 will be DISMISSED.

### III. Analysis of the Motion to Dismiss

#### A. Statute of Limitations

Under federal law, state prisoners filing a writ for habeas corpus must abide by a one-year limitation period. Specifically, 28 U.S.C. § 2244(d) states:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

    (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Pursuant to 28 U.S.C. § 2244(d)(1)(A), Nelson's judgment became final on Tuesday, December 28, 2004, the last day to file a petition for certiorari in the Supreme Court of the United States. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing § 2244(d)(1)(A))); Sup. Ct. R. 13(1) (petition for certiorari should be filed within ninety days of entry of judgment by state court of last resort or of the order denying discretionary review). Thus, under § 2244(d)(1)(A), Nelson had one year, or until Wednesday, December 28, 2005 to file a federal habeas corpus petition challenging his conviction or sentence. He failed to file his § 2254 Petition until April 28, 2012, approximately six years and four months beyond the limitation period. Unless Nelson's claim qualifies for tolling of the limitation period, he has failed to timely file his § 2254 Petition.

### B. Nelson's §2254 Petition Receives No Statutory Tolling of the Limitation Period

To qualify for statutory tolling, an action must be a (1) properly filed (2) post-conviction or other collateral review of (3) the pertinent judgment. 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). These rules and laws "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and the office in which it must be lodged, and the requisite filing fee." *Id.* (footnote omitted). A petition that a state court denies as untimely fails to qualify as "properly

6

filed" within the meaning of the Antiterrorism and Effective Death Penalty Act. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Nelson filed a petition for writ of habeas corpus in the Circuit Court and an appeal to the Supreme Court of Virginia, but his claims fail to qualify for statutory tolling. First, because Nelson filed his petition after the federal statute of limitations had expired, no period to toll existed.[12] *Deville v. Johnson*, No. 1:09cv72(CMH/TRJ), 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010) (citing *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)). Second, the Circuit Court denied Nelson's petition as untimely, and the Supreme Court of Virginia denied his appeal as untimely. Thus, Nelson's petition and appeal fail to qualify as "properly filed" applications for post-conviction relief and fail to warrant a period of statutory tolling. *Pace*, 544 U.S. at 413; *Artuz*, 531 U.S. at 8-9.

Nelson filed his § 2254 Petition on April 28, 2012, six years and four months after the limitation period expired. Because Nelson failed to file his § 2254 Petition within one year, the statute of limitations bars his § 2254 Petition unless he can demonstrate entitlement to belated commencement or equitable tolling. Nelson argues his actual innocence entitles him to equitable tolling. This argument falls short because Nelson provides no new, reliable evidence and fails to establish his claim of actual innocence.

### C. Nelson's Petition Receives No Equitable Tolling of the Limitation Period

#### 1. Applicable Law

The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*,

---

[12] Nelson filed his petition in the Circuit Court on January 24, 2011, more than five years beyond the December 27, 2005 deadline.

7

130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" to demonstrate that he or she fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Nelson claims his actual innocence justifies his delayed petition. The Supreme Court has recognized actual innocence as a basis for tolling the statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations").

"Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Here, the Court reviews Nelson's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Nelson's actual innocence claims would permit the Court to consider the merits of his otherwise time-barred habeas petition. A gateway claim requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.*

If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the

8

standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327-28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D.Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

### 2. Nelson Fails to Provide New Reliable Evidence

Nelson presents two arguments to support his actual innocence claim. First, Nelson asserts that the "alibi evidence petitioner's defense witness presented at trial negates all physical possibility that the petitioner had committed any crime." (Mem. Supp. § 2254 Pet. 7-8.) Nelson claims he was in New York at the time of the murder, and he produced a witness who testified to that effect. Nelson already presented this alibi evidence at trial through the testimony of Alaya Frederick.[13] He cannot claim it as "new evidence" to support his actual innocence claim. *See Schlup*, 513 U.S. at 324 (explaining that, to be credible, an actual innocence claim requires a petitioner to support his allegations of constitutional error with "new reliable evidence . . . that was not presented at trial").

Second, Nelson avers that the Commonwealth's Attorney and Fredericksburg Police Department failed to preserve evidence "which possessed exculpatory value that was apparent before the evidence was surrendered . . . without further testing of the weapon for any

---

[13] Alaya Frederick supplied Nelson's alibi defense at trial. She testified that she lived with Nelson in New York (Trial Tr. vol. VI, 94:18-95:10, 96:13-15), and that Nelson never left New York in December of 1999 (*id.* at 98:6-7, 100:13-19), thus, making it impossible for Nelson to have committed the shooting in Virginia during that month.

fingerprints or other DNA evidence, which would prove petitioner's actual innocence." (Mem. Supp. § 2254 Pet. 10 (capitalization corrected).) Nelson suggests that the absence of his DNA, or the presence of someone else's DNA, on the murder weapon would exonerate him. Nelson's mere *allegation* of the existence of new evidence falls short of the burden of presenting "new reliable evidence" of his actual evidence. *See Weeks*, 119 F.3d at 1351-52 (explaining that allegations of evidence without "substance" prove insufficient to satisfy the requirement of "new reliable evidence"). Nelson's bare, conclusory assertion absent the upshot of any actual evidence gleaned from testing the weapon fails to invoke the actual innocence exception. Nelson's alibi evidence and allegations of exculpatory evidence do not qualify as "new reliable evidence." Thus, the Court need not proceed to the second step of the actual innocence inquiry.

### 3. Even Assuming That Nelson Could Meet the First Prong of Actual Innocence Inquiry, He Fails to Establish Actual Innocence

Even considering Nelson's previously presented alibi evidence and new allegations about the untested firearm as "new evidence," Nelson falls far short of meeting his burden of demonstrating actual innocence. He fails to show that "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe*, 593 F.3d at 377 (quoting *Schlup*, 513 U.S. at 327-28). The Virginia Court of Appeals aptly summarized the overwhelming evidence of Nelson's guilt as follows:

> [T]he evidence proved Leslie Camp stood with Solomon Alexander near Alexander's car and discussed Camp's pregnancy and names for the baby. Camp previously had had a romantic relationship with Alexander. Charles Satterfield, Camp's fiancé, was standing near the door of Camp's residence. When Satterfield and Alexander exchanged angry words regarding the naming of the baby, Alexander displayed a small handgun. Appellant then exited Alexander's car and fired a rifle four or five times. Camp ran to a neighbor's house. When she returned a few minutes later, appellant, Alexander, and Alexander's car were gone. Satterfield had suffered five gunshot wounds and was dead.
> Camp testified she had a clear view of appellant's face at the time of the shooting and she was sure he was the person who shot Satterfield. Although she

> did not know appellant before the incident, Camp learned appellant's name from Alexander's mother on the night of the shooting.
>
> Bobby Ratley was a passenger in Alexander's vehicle when Satterfield was shot. Ratley testified that appellant exited the vehicle, pointed a rifle at Satterfield, and fired it several times. After the shooting, appellant, Alexander, and Ratley fled to Ratley's mother's apartment in New York. Appellant was arrested in New York.
>
> Detective Doug Perkins recovered a .30-30 caliber bullet and cartridge casings from the crime scene. A .30-30 bullet was taken from Satterfield's body during the autopsy. Forensic evidence proved that all of the .30-30 bullets and cartridge casings recovered by the police were fired from a .30-30 Winchester rifle the New York police seized from Ratley's mother's apartment.
>
> Alexander's mother testified that her son, appellant, and Bobby Ratley, stayed at her Stafford home for a period of time in December of 1999. Appellant, however, told the police he had not been in Virginia in December of 1999. The evidence also proved appellant's fingerprints were on the passenger side window of Alexander's vehicle.

*Nelson v. Commonwealth*, No. 3408-02-2, at 3-4 (Va. Ct. App. July 11, 2003).

Considering all of the evidence, old and new, Nelson fails to demonstrate that "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe*, 593 F.3d at 377 (quoting *Schlup*, 513 U.S. at 327-28). In sum, Nelson's "new evidence" consists of an already rejected alibi and the bald assertion that testing the murder weapon for physical evidence might exonerate him. Neither piece of evidence carries significant exculpatory value.

As to the alibi, Alaya Frederick may have testified Nelson never left New York in December of 1999, but Linda Alexander, who is Solomon Alexander's mother and Nelson's second cousin, testified that Nelson stayed at her home in Stafford, Virginia around the time of the murder. (Trial Tr. vol. V, 356:20-357:20; vol. VI, 17:1-19:11.)[14] Nelson's own family member refuted the notion that Nelson never left New York in December of 1999. (Trial Tr. vol.

---

[14] Linda Alexander testified that Nelson, Bobby Ratley, and her son, Solomon Alexander, visited her at her Stafford, Virginia home for approximately three days around or before December 10, 1999. (Trial Tr. vol. VI, 17:1-19:11).

11

VI, 17:1-19:11.) Also, two eyewitnesses, Leslie Camp (Trial Tr. vol. V, 175:9-176:18), and Bobby Ratley (Trial Tr. vol. VI, 30:8-15, 42:21-44:13), unequivocally identified Nelson as the shooter. Ratley testified that after the shooting, he, Solomon Alexander, and Nelson all fled to Ratley's grandmother's house in New York (*Id.* 44:13-46:20), where Detective Kenneth Cetin of the New York City Police Department later recovered the murder weapon (Trial Tr. vol. V, 334:3-336:21). Nelson has put forth no evidence suggesting that these witnesses testified falsely or had a motive to do so.

As to any exculpatory evidence, Nelson speculates that further testing of the murder weapon would undoubtedly prove his innocence. However, the potential absence or presence of Nelson's DNA on the weapon, weighed against the compelling evidence of his guilt, fails to demonstrate Nelson's innocence. Multiple eyewitnesses identified Nelson as the shooter. The police recovered the murder weapon from the apartment Nelson fled to after the shooting. The alibi testimony and Nelson's specultation about DNA test results have little, to no, exculpatory value.

Nelson cannot meet his burden of demonstrating actual innocence. Therefore, he fails to establish that his alleged actual innocence permits the Court to reach the merits of his time-barred § 2254 Petition.

### IV. Conclusion

For the foregoing reasons, the Court finds Nelson's § 2254 Petition barred by the statute of limitations. Accordingly, the Respondent's Motion to Dismiss (ECF No. 10) will be GRANTED, Nelson's claims will be DISMISSED, Nelson's § 2254 Petition will be DENIED, and the action will be DISMISSED.

A petitioner may not appeal from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). No law or evidence suggests that Nelson is entitled to further consideration in this matter. A COA will therefore be DENIED.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 7/29/13